UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| SUSAN L. LOCKRIDGE-GRIFFITH, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FAUQUIER MEDICAL CENTER, LLC, )<br>d/b/a Fauquier Health and/or Fauquier )<br>Medical Center, a Delaware limited liability )<br>company, )<br>)<br>FAUQUIER PARTNER, LLC, )<br>a Delaware limited liability company, )<br>)<br>and )<br>)<br>LIFEPOINT RC, INC., a Delaware )<br>corporation, )<br>)<br>Defendants. )<br>) | Civil Action No. 5:21-CV-00026 |

COMPLAINT
(Jury Trial Demanded)

The Plaintiff, Susan L. Lockridge-Griffith ("Lockridge-Griffith" or "Plaintiff"), by counsel, complaining of the Defendants Fauquier Medical Center, LLC, doing business as Fauquier Health and/or Fauquier Medical Center, a Delaware limited liability company, Fauquier Partner, LLC, a Delaware limited liability company, and LifePoint RC, Inc., a Delaware corporation, alleges and says:

NATURE OF THE ACTION

1.      Plaintiff brings this action for legal and equitable relief to correct and remedy her employers' unlawful, discriminatory, and retaliatory employment practices during the course of

and in the termination of her employment. Plaintiff brings this action to make her whole and compensate her for Defendants' violations of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* (the "FMLA") and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.* (the "ADA").

## JURISDICTION AND VENUE

2. Jurisdiction is founded in this case upon 28 U.S.C. §§ 1331, 1343, 29 U.S.C. § 2617 and 42 U.S.C. § 12117. The demand for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

3. Plaintiff is a resident of this District and Division. Venue is proper in this District and Division under the special venue provisions of 42 U.S.C. § 2000e-5(f)(3), and because portions of the conduct complained of in this case occurred in this District and Division.

## ADMINISTRATIVE PROCEEDINGS

4. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") including the disability discrimination complained of herein on March 11, 2020. A true copy of the Charge is attached hereto marked Exhibit 1 and is incorporated herein by reference. The EEOC issued Plaintiff a Notice of Right to Sue letter dated January 6, 2021, informing her that she had 90 days from her receipt of the Notice within which to file suit.

5. Plaintiff and her counsel received the Notice of Right to Sue letter on or after January 6, 2021. This action has been commenced within 90 days of the date Plaintiff received the Notice of Right to Sue Letter.

6. All administrative conditions precedent to the filing of this lawsuit have been performed or have occurred.

## PARTIES

7. Plaintiff is a 51-year-old female. She is a citizen of the United States and a resident of Luray, Page County, Virginia.

8. At times relevant to the claims herein, Plaintiff had been employed by Defendants for more than 12 months, working in excess of 1250 hours with Defendants during the previous 12-month period. Plaintiff was an "eligible" employee within the meaning of the FMLA pursuant to 29 U.S.C. § 2611(a). Additionally, at all relevant times, Plaintiff was a "qualified individual" within the meaning of the ADA pursuant to 42 U.S.C. § 12111(8).

9. Defendant Fauquier Medical Center, LLC, does business as Fauquier Health and/or Fauquier Medical Center, and is and at all times relevant to the matters alleged herein was a limited liability company organized and existing under the laws of the State of Delaware and is authorized to transact business in the Commonwealth of Virginia, with its principal office located in Brentwood, Tennessee. Defendant Fauquier Medical Center, LLC's registered agent is located in Glen Allen, Virginia.

10. Defendant Fauquier Partner, LLC, is and at all times relevant to the matters alleged herein was a limited liability company organized and existing under the laws of the State of Delaware and is authorized to transact business in the Commonwealth of Virginia with its principal office located in Brentwood, Tennessee. Defendant Fauquier Partner, LLC's registered agent is located in Glen Allen, Virginia.

11. Defendant LifePoint RC, Inc., is a corporation organized under the laws of the State of Delaware. Defendant LifePoint was authorized to transact business in the Commonwealth of Virginia until January 2017 when it formally withdrew its authorization. It no longer maintains a registered agent in Virginia and does not have current authorization to transact business in Virginia. Nonetheless, in 2020, it continued to represent to the Internal Revenue Service ("IRS") and Plaintiff that it, along with the other two Defendants in this case, employed Plaintiff.

12. Plaintiff received IRS forms, including her IRS forms W-2 showing all three of the Defendants as her employer.

13. Defendants Fauquier Medical Center, LLC, d/b/a Fauquier Health and/or Fauquier Medical Center, Fauquier Partner, LLC, and LifePoint RC, LLC, were the joint employers of Plaintiff at all times relevant to the matters alleged herein. Alternatively, Defendants together were an integrated enterprise employing Plaintiff at the Fauquier Medical Center where for many years she was employed as a supervisor in the phlebotomy laboratory. Together, Defendants Fauquier Medical Center, LLC, Fauquier Partner, LLC, and LifePoint RC, LLC will be referred to hereinafter as Defendants.

14. At all times relevant to the matters alleged herein, Defendants operated a business engaged in the provision of health care services to the general public in Warrenton, Virginia and the surrounding area. At all relevant times, Defendants operated medical facilities, including a hospital, in Warrenton, Fauquier County, Virginia.

15. At all times relevant to the matters alleged herein, Defendants together or separately were and are an employer engaged in an industry affecting commerce, each of which had more than 500 employees for each working day in each of twenty or more calendar weeks in each relevant calendar year. Further, Defendants employed more than 50 employees at the worksite in Warrenton, Virginia, where Plaintiff worked. Each of the Defendants was and is, and together they were and are, an "employer" within the meaning and subject to the provisions of the FMLA pursuant to 29 U.S.C. § 2611(4)(A).

16. At all times relevant to the matters alleged herein, each of the Defendants was and is, and together they were and are, an "employer" within the meaning and subject to the provisions of the ADA pursuant to 42 U.S.C. § 12111(5)(A).

17. At all times relevant to the matters alleged herein, Defendants' agents and employees were acting during the course and within the scope of their employment or agency and with the knowledge and consent of Defendants.

## FACTS

18. Plaintiff has a Bachelor of Science degree with a Medical Technologist ASCP certification. She began working for Defendants at Fauquier Medical Center as a PRN Medical Technologist staff technologist in January 2008. Within her first year of employment and given her proficiency in her work, she became a supervisor in the laboratory over the phlebotomy and laboratory assistant team.

19. Plaintiff enjoyed her work, performed her job well, and met or exceeded Defendants' legitimate expectations of her during her employment and through the time her employment was illegally terminated on August 28, 2019. Throughout her eleven years of employment with Defendants, Plaintiff had had only good performance reviews.

20. In July 2015, Plaintiff was out of work for eight weeks for back surgery and returned to work with a few restrictions, predominantly related to lifting. Defendants accommodated those restrictions, allowing Plaintiff to work despite such lifting restrictions because they imposed no undue burden and Plaintiff was able to perform the essential functions of her supervisor position. Similar accommodations were given to other employees working for Fauquier Health.

21. On January 20, 2019, Plaintiff injured her right knee in a skiing accident. After seeking medical treatment, she returned to work on crutches on January 23, 2019.

22. Plaintiff's injury was serious. She suffered a torn ACL, MCL, and meniscus in two places, with a diagnosis of rupture of anterior cruciate ligament as well as complex tear of medial meniscus and complex tear of lateral meniscus of her right knee. She also suffered a compression fracture of the tibia, all of which were revealed on an MRI of her knee. On February 12, 2019, after having reviewed the MRI, Plaintiff's health care provider instructed Plaintiff to be non-

weightbearing with full restriction status due to the extent of her injury. Plaintiff advised her supervisor, Kelly Yoder, and Defendants' disability coordinator of her restrictions.

23. Plaintiff was allowed to work with restrictions after her January 20, 2019 accident and prior to April 3, 2019. While working during that period, Ms. Yoder required Plaintiff to perform "bench shifts," which required Plaintiff to fill in for staff during shortages. Ms. Yoder orchestrated these assignments to require Plaintiff to perform phlebotomy duties not normally assigned to her as supervisor. This required Plaintiff to violate her doctor's restrictions to be non-weight bearing on crutches, stand for long periods, and walk without crutches to perform phlebotomy duties. She was also required to push phlebotomy carts that typically weighed more than ten pounds, but that task did not require over ten pounds of pressure to manipulate. Ms. Yoder was well aware that reasonable accommodations were available, including that she could move a lab assistant into the vacant phlebotomy shift and put Plaintiff in the Main Lab covering as a lab assistant, which would have been consistent with how other staff had been accommodated over the years.

24. Plaintiff's health conditions were serious physical impairments resulting from her January 20, 2019 accident and right knee injury that substantially limit major life activities, including walking, lifting, standing, bending, and kneeling. Plaintiff has a record of such impairments and/or Defendants perceived her as being so impaired. Despite her health conditions arising from her injury, Plaintiff continued to perform her job well with or without reasonable accommodations, and she was able to use available leave for days she was required to be off work due to her health conditions.

25. On April 9, 2019, Plaintiff received her annual employee evaluation which evaluated her as meeting Defendants' performance expectations. In one category, however, the

6

evaluation noted that Plaintiff had been tardy too often. Although this did not affect the evaluation's conclusion that Plaintiff met expectations for the period, Plaintiff had never received any corrective action during that evaluation period for attendance, tardiness, or anything else, nor had there ever been any conversations with her supervisor about such issues. Also, Plaintiff was working multiple different shifts in different geographic locations, not allowing for any schedule structure, and she was shaving time anywhere she could to keep her overtime down as required by Ms. Yoder.

26. On April 10, 2019, Plaintiff underwent surgery on her right knee to address her health conditions, including ACL reconstruction. Plaintiff began FMLA-qualifying and approved leave on that date. Up until the surgery, Plaintiff had been able to perform the essential functions of her job with or without reasonable accommodation.

27. On June 19, 2019, Plaintiff's surgeon released her to return to work on June 20, 2019 with restrictions, which included lifting, pulling, or pushing no more than ten pounds, walking two hours at a time, standing two hours at a time, stooping thirty minutes at a time, no kneeling, and repeated bending thirty minutes at a time. She was able to work a total of ten hours a day. Her surgeon advised her to sit for a brief time, five to ten minutes, after walking or standing for 2 hours. These restrictions were reasonable accommodations for Plaintiff's condition. As the laboratory supervisor for Defendants for more than eleven years, there was never a time where such restrictions would prevent Plaintiff from performing the essential functions of her job. Plaintiff's position was primarily a desk job managing staff, processes, and daily workflow. Alternatively, with her surgeon's restrictions, Plaintiff was able to perform the essential functions of her job and could easily have been accommodated to allow her to return to work as she and others had been in the past. Nonetheless, Plaintiff's supervisor stated to Defendants' Employee

Health office that the supervisor would not accommodate Plaintiff's restrictions as requested and she would not allow Plaintiff to return to work.

28. Since Plaintiff herself was a supervisor, she could still do the essential functions of her position with or without reasonable accommodations requested through her surgeon. There were other staff members who could fill in for phlebotomists, and Plaintiff could easily do the lab assistant shifts, to the extent required, within her restrictions.

29. Plaintiff was the only person working for Defendants in the past eleven years not allowed to return to work with similar restrictions. She became concerned for her position and feared that Defendants would terminate her rather than provide her with a reasonable accommodation.

30. Plaintiff advised Defendants' Employee Health and Human Resources personnel that her supervisor had not honored her restrictions prior to her April 10, 2019 knee surgery, that Plaintiff remained able to perform her job, and that her supervisor had improperly marked her down on her employee evaluation just prior to her surgery. Nonetheless, Defendants refused to provide a reasonable accommodation for Plaintiff's condition, to the extent she needed an accommodation.

31. As a result of Defendants not allowing Plaintiff to return to work with reasonable accommodations and its failure to engage in the interactive process required by the ADA, Plaintiff was forced to take additional FMLA leave that she did not need in violation of the FMLA.

32. Defendants' policies allow for twelve weeks of FMLA leave and an additional eight weeks of general leave for, among other things, health conditions and disabilities. Additional time beyond twenty weeks is up to the director's discretion. Prior to this situation with Plaintiff's

request to return to work, Defendants had provided other staff with additional medical leave time beyond twenty weeks in other instances.

33. On July 2, 2019, Plaintiff's initial twelve weeks of FMLA leave was exhausted due to Defendants' refusal to allow her to return to work on June 20, 2019. Nonetheless, Plaintiff still had eight more weeks of leave available under Defendants' policy. Because Defendants' policy provided for a total of 20 weeks for medical leave, this leave also was protected under the FMLA.

34. On August 2, 2019, Plaintiff's surgeon again released her to return to work effective August 5, 2019 with similar restrictions that again constituted reasonable accommodations. With or without her surgeon's restrictions, Plaintiff was able to perform the essential functions of her job and she could easily have been accommodated and returned to work, just as she could have been when she was released to return to work with restrictions on June 20, 2019. Ms. Yoder again stated to Defendants' Employee Health that she would not accommodate Plaintiff's restrictions, even though Plaintiff again was able to return to work.

35. On August 13, 2019, Plaintiff sought a short period of additional leave through October 4, 2019 through a certification by her surgeon that she would be able to return to work by then with no restriction whatsoever.

36. Prior to the expiration of her twenty weeks of leave, Plaintiff made multiple attempts to contact Defendants' Human Resources department to learn the status of her leave and the request to extend it until October 4, 2019. The only response she received was that the representative told Plaintiff she would look into it and call her.

37. Provision for leave beyond the twenty weeks allowed under Defendants' policy was within the Defendants' director's discretion and was a request for a reasonable accommodation. That requested accommodation could have easily been provided to Plaintiff, as she only had five

more weeks to be fully released, to the extent she was not entitled to be returned to work in June and August. Plaintiff's request for reasonable accommodation of an additional short period of leave was refused and she was not offered a reasonable alternative position. The refusal was communicated to Plaintiff at her home in Luray, Virginia.

38. On August 28, 2019, Plaintiff received a call from Defendants' Human Resources representative informing her that she was being terminated due to the expiration of twenty weeks of leave. Plaintiff was at her home when she received the call. The termination was confirmed in writing by letter on letterhead of Defendant Fauquier Health dated August 28, 2019 sent to Plaintiff's home.

39. Ms. Yoder made statements to one of Plaintiff's subordinates, Yvette Farrell, not that Plaintiff was unable to perform the supervisory work to which she sought to return, but that rather, Plaintiff's position was being eliminated. This statement was false. There was no position elimination, and Plaintiff was replaced by a lab assistant who was placed in a position with duties substantially comparable to those Plaintiff had performed. Defendants later changed the story and contended that they could not accommodate Plaintiff because they needed to fill her position. Ms. Yoder's statement to Plaintiff's subordinate, and its changing of the story, evidences the pretextual nature of Defendants' refusal to return Plaintiff to her job.

40. As a result of Defendants' actions, Plaintiff has suffered loss of and been denied her job, income, and benefits and has suffered emotional distress, humiliation, embarrassment, injury to her reputation, anxiety, and depression.

COUNT I-Violations of the FMLA

41. Plaintiff incorporates by reference and realleges the foregoing paragraphs as if fully set forth here.

42. Plaintiff's health conditions, including her knee injury, which required surgery and a period of recovery, constituted serious health conditions within the meaning of the FMLA and/or its implementing regulations, of which Defendants were well aware.

43. At all relevant times, Plaintiff suffered from chronic conditions that were treated with medications, surgery, and physical therapy, and required more than two visits per year to see a healthcare provider to treat the conditions. Plaintiff's chronic serious health conditions and her related need for absences were protected under the FMLA.

44. Plaintiff had not exhausted her FMLA leave entitlement with respect to the matters complained of herein through the date of her attempt to return to work on June 20, 2019.

45. Plaintiff had not exhausted the leave to which she was entitled under Defendants' policies with respect to the matters complained of herein through the date of her second attempt to return to work on August 5, 2019.

46. Plaintiff was entitled to and took leave under the FMLA as a result of her serious health condition.

47. Defendants interfered with Plaintiff's rights under the FMLA by requiring her to use more leave than she needed and by refusing to return her to a comparable position when she was released by her doctor on June 19, 2019 allowing her to return to work on June 20, 2019.

48. Defendants further interfered with Plaintiff's rights under the FMLA by requiring her to use more leave than she needed and by refusing to return her to a comparable position when she was released by her doctor to return to work on August 5, 2019.

49. Defendants used Plaintiff's required leave, which was FMLA-qualifying, and Plaintiff's possible future need for leave in relation to her serious health conditions as negative factors in employments decisions relating to her, including in refusing to return Plaintiff to work in her job as a laboratory supervisor or a comparable position.

50. Defendants interfered with Plaintiff's rights under the FMLA, retaliated, and discriminated against Plaintiff for using FMLA qualifying leave, failed to allow Plaintiff to return

to her job following FMLA qualifying leave, and terminated Plaintiff from her employment in violation of 29 U.S.C. § 2615(a)(1) and (a)(2) and/or 29 U.S.C. §§ 2615(b).

51. Defendants' conduct complained of herein was willful and without legal justification. Defendants' conduct interfered with, restrained, and/or denied the exercise of or attempt to exercise Plaintiff's rights under the FMLA.

52. As a direct and proximate result of the acts and practices of Defendants, its agents, and employees set forth herein, Plaintiff has suffered and continues to suffer injury and damage, including loss of employment, and past and future loss and denial of income, including wages, healthcare benefits, and other employment benefits, together with costs and expenses of litigation, including attorney's fees.

## COUNT II-Violations of the ADA

53. Plaintiff incorporates by reference and realleges the foregoing paragraphs as if fully set forth here.

54. The ADA Amendment Act of 2008 (ADAAA) applies to Plaintiff's ADA claims of failure to accommodate and wrongful termination because Defendants' actions took place after the effective date of the ADAAA. Pub. L. 110-325, § 8, 122 Stat. 3553 (Sept. 25, 2008), codified at 42 U.S.C. § 12101 (Note). Under the ADAAA, Plaintiff's disability must be assessed without regard to the ameliorative effects of mitigating measures like medical treatments, including hospitalization, surgery, physical therapy, and medication. 42 U.S.C. §12102(4)(E)(i); 29 C.F.R. § 1630.2(j)(1)(vi).

55. At all relevant times, Plaintiff was able to perform the essential functions of her job with or without reasonable accommodation, including when she sought to return to work on June 20, 2019, August 5, 2019, and October 4, 2019.

56. Plaintiff took medical leave to which she was entitled under the FMLA, the ADA, and Defendants' leave policies relating to her disabilities during 2019. She also requested reasonable accommodations for her disabilities and provided Defendants with her doctor's notes requiring appropriate and reasonable accommodations of a short period of additional leave more two weeks before she was terminated from her employment. All of Plaintiff's requests for accommodations of her conditions were reasonable.

57. Defendants were aware of Plaintiff's disabilities and need for periods of leave and for reasonable accommodations in relation to her disabilities.

58. Among other things, Defendants:

a. terminated Plaintiff's employment based upon Plaintiff's disabilities, whether actual, through the record of Plaintiff's substantially limiting impairments, or Defendants having regarded Plaintiff as being so impaired;

b. failed and/or refused to make and implement reasonable accommodations with respect to Plaintiff's disability or disabilities, including allowing Plaintiff to return to work when she was released to do so with reasonable restrictions that allowed her to continue performing the essential functions of her supervisory position, and/or providing a short period and/or short periods of medical leave (to which Plaintiff was entitled under the FMLA, the ADA, and Defendants' own leave policies), and these failures and refusals were not in good faith;

c. refused to return Plaintiff to her job as a laboratory supervisor in June 2019 based on her disability and because of her exercise of her right to take a short period of time off work, or the need to take a short period of time off work in the future due to her disability;

      d.    refused to return Plaintiff to her job as a laboratory supervisor in August 2019 based on her disability and because of her exercise of her right to take a short period of time off work, or the need to take a short period of time off work in the future due to her disability;

      e.    refused to provide Plaintiff with a short period of additional leave following expiration of other medical leave to which Plaintiff was entitled in order to allow her to return to her job on October 4, 2019;

      f.    terminated Plaintiff's employment on August 28, 2019 based on the need to make reasonable accommodations because of Plaintiff's disability;

      g.    imposed what in effect was a 100% healed requirement on Plaintiff, which imposed artificial limits on returning Plaintiff to her job when she could easily have been accommodated in June, 2019 and August, 2019, and then when she should have been provided a short additional period of leave and then allowed to return to work;

      h.    terminated Plaintiff's employment based on the need or perceived need to make reasonable accommodations in the future for Plaintiff's disability;

      i.    used Plaintiff's disability, whether actual or through a perception of disability and/or her record of having a substantial impairment of major life activities, as negative factors in consideration of her job performance and anticipated future performance;

      j.    failed to engage and/or continue to engage in a good faith interactive process with Plaintiff and her healthcare providers to determine the extent and nature of the necessary reasonable accommodations for Plaintiff's disability; and

k.  otherwise discriminated against Plaintiff based upon disability under the ADA.

59. Defendants' adverse actions taken in connection with Plaintiff's employment were discriminatory and based on Plaintiff's disability.

60. Plaintiff was and is qualified for the job she was performing as a laboratory supervisory because she satisfies the skill, experience and other job-related requirements for the position as well as other positions at Defendants.

61. At all relevant times, Plaintiff was able to perform the essential functions of the position she was occupying as laboratory supervisor with or without reasonable accommodation.

62. Defendants' intentional discrimination was with respect to terms, conditions, and privileges of Plaintiff's employment, caused Plaintiff damage during her employment, and resulted in the termination of her employment with Defendants because of disability.

63. As a consequence of Defendants' intentional discrimination based on disability, Plaintiff has suffered, continues to suffer, and will in the future suffer great emotional distress, anxiety, stress, embarrassment, humiliation, pain, suffering, damage to reputation, and loss of enjoyment of life.

64. As a consequence of Defendants' actions, Plaintiff has lost wages and other financial incidents and benefits of employment, and Plaintiff will continue to suffer such losses.

65. As a consequence of the acts and omissions of Defendants, Plaintiff has incurred and will continue to incur attorneys' fees, costs, and other litigation expenses.

66. Defendants engaged in the practices complained of with malice or with reckless indifference to Plaintiff's federally protected rights under the ADA entitling her to the recovery of punitive damages.

### COUNT III-Violations of the ADA-Retaliation

67. Plaintiff incorporates by reference and realleges the foregoing paragraphs as if fully set forth here.

68. Plaintiff took medical leave in 2019, including from April 10, 2019 through August 28, 2019, due to her disability and/or disabilities. Plaintiff sought reasonable accommodations in the event her time off was not otherwise protected and reasonably believed she may have needed a defined, short period of leave to which she was entitled under the ADA in the future similar to leave Defendants provided other employees.

69. In violation of 42 U.S.C. § 12203(a), Defendants discriminated and retaliated against Plaintiff through the denial of the return of Plaintiff to her supervisory job and through the termination of her employment because Plaintiff used leave to which she was entitled under the ADA and/or exercised rights to a reasonable accommodation under the ADA, which consisted of short periods of medical leave and the return to work following periods of medical leave to treat her disability and/or disabilities.

70. As a consequence of Defendants' violations of the ADA, including its discriminatory and retaliatory conduct, Plaintiff has suffered great emotional distress, anxiety, stress, embarrassment, humiliation, pain, suffering, and loss of enjoyment of life.

71. As a consequence of Defendants' actions, Plaintiff has lost employment, wages and other financial incidents and benefits of employment.

72. As a consequence of the acts and omissions of Defendants, Plaintiff has incurred and will continue to incur attorneys' fees, costs, and expenses.

73. Defendants engaged in the practices complained of with malice or with reckless indifference to Plaintiff's federally protected rights under the ADA entitling her to the recovery of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Susan L. Lockridge-Griffith demands judgment against Defendants Fauquier Medical Center, LLC, d/b/a Fauquier Health and/or Fauquier Medical Center, Fauquier Partner, LLC, and LifePoint RC, Inc., jointly and severally, as follows:

(a) For a declaration that the acts and practices complained of herein are in violation of Plaintiff's rights as secured by the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* (the "FMLA")*,* and/or the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.* (the "ADA")*;*

(b) For an order requiring Defendants to reinstate Plaintiff to her position with Defendants, or in a position with comparable duties and responsibilities and with equal pay and benefits as Plaintiff would have received but for Defendants' conduct in violation of the FMLA and/or the ADA, and reinstating all benefits to which Plaintiff would have been entitled but for Defendants' conduct in violation of the FMLA and/or the ADA, or in the alternative if such award is not feasible, for an award of front pay and future benefits against Defendants under the FMLA and/or the ADA;

(c) For a permanent injunction enjoining Defendants from any conduct violating Plaintiff's rights as secured by the FMLA and/or the ADA;

(d) For an award against Defendants Fauquier Medical Center, LLC, Fauquier Partner, LLC, and LifePoint RC, Inc. for back pay, prejudgment interest, and appropriate recovery for lost

employment benefits and other affirmative relief as may be appropriate, and for all other wages and benefits denied or lost under the FMLA;

(e) For an award against Defendants of liquidated damages pursuant to 29 U.S.C. § 2617;

(f) For an award against Defendants of compensatory damages under the ADA in an amount to be determined by the jury;

(g) For an award against Defendants of punitive damages under the ADA in an amount to be determined by the jury;

(h) For an award against Defendants of reasonable attorneys' fees and costs incurred in this action, together with expert witness fees and expenses, pursuant to the FMLA and/or ADA;

(i) For an award against Defendants in an amount necessary to offset the adverse tax consequences of an award received in a lump sum;

(j) For an award against Defendants of pre- and post-judgment interest on any monetary award under the FMLA and under the ADA; and

(k) For any other relief this Court deems to be just and proper.

PLAINTIFF DEMANDS TRIAL BY JURY pursuant to Fed. R. Civ. P. 38.

                               SUSAN L. LOCKRIDGE-GRIFFITH

                               By: s/Timothy E. Cupp
                                      Counsel

Timothy E. Cupp (VSB No. 23017)
Shelley Cupp Schulte, P.C.
1951 Evelyn Byrd Avenue, Suite D
PO Box 589
Harrisonburg, Virginia 22803
(540)432-9988
(804)278-9634 (facsimile)
Email:  cupp@scs-work.com

Tim Schulte (VSB No. 41881)
Shelley Cupp Schulte, P.C.
3 West Cary Street
Richmond, Virginia 23220
(804)644-9700
(804)278-9634 (facsimile)
Email:  schulte@scs-work.com
*Counsel for Plaintiff*